IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-cv-1268

CITIZENS FOR A HEALTHY COMMUNITY;

HIGH COUNTRY CONSERVATION ADVOCATES; WILDERNESS WORKSHOP; CENTER FOR BIOLOGICAL DIVERSITY;

and WILDEARTH GUARDIANS,

Petitioners,

v.

UNITED STATES DEPARTMENT OF THE INTERIOR,

UNITED STATES BUREAU OF LAND MANAGEMENT, an agency of the U. S. Department of the Interior;

UNITED STATES FOREST SERVICE, an agency of the U.S. Department of Agriculture;

Federal Respondents,

and

GUNNISON ENERGY LLC,

Intervenor Respondents.

**FEDERAL DEFENDANTS' MOTION
FOR VOLUNTARY REMAND WITHOUT VACATUR**

1

Federal Defendants respectfully request that the Court remand, without vacatur, the Bureau of Land Management's ("BLM") and the United States Forest Service's ("Forest Service") decisions with respect to the North Fork Mancos Master Development Plan (NFMMDP). Federal Defendants submit this motion in lieu of filing a response to Plaintiffs' Opening Merits Brief. ECF No. 17. Remand is appropriate here because BLM has identified substantial concerns with the National Environmental Policy Act ("NEPA") analysis underlying the NFMMDP decisions and BLM and the Forest Service intend to undertake a process to review that analysis and the challenged decisions.

Per Local Rule 7.1(a), Federal Defendants have conferred with the parties regarding this motion. Plaintiffs oppose a motion for voluntary remand without vacatur. Intervenor-Defendant, Gunnison Energy LLC., takes no position on the motion at this time. Intervenor-Defendant reserves its right to file a response to Federal Defendants' remand request once it has reviewed the motion. The parties agree to and respectfully request this Court vacate all briefing deadlines on the merits until after the motion for remand is resolved.

## BACKGROUND

This case involves a challenge to the NFMMDP for development of existing federal oil and gas leases, which applies to lands located northeast of Paonia, Colorado, and north and west of State Highway 133 in Gunnison and Delta counties as well as the Forest Service's approval of a Surface Use Plan of Operations for portions of the NFMMDP on National Forest System lands. *See* Plaintiffs' Opening Merits Brief, ECF No. 17 at 7. The NFMMDP provides a plan for development of up to 35 new oil and gas

2

wells and associated infrastructure on federal land and mineral estate. *See* FED022127[1]. Of the 34,906 acres in the project area, 45.97 acres (0.13%) would be disturbed under the NFMMDP, including 17.33 acres of long-term disturbance (0.05% of the total area). *See* FED022127.

BLM and the Forest Service jointly prepared an environmental assessment ("EA") to analyze the potential environmental impacts from the wells expected under the NFMMDP, *see* FED022119 (EA for NFMMDP); FED022249 (EA Appendix A-D); FED022379 (EA Appendix E-J); FED022551 (EA Appendix K). The agencies provided public notice and opportunities for public comment on the preliminary EA and revised preliminary EA, FED022133, before preparing the final EA, FED022119. BLM issued a Decision Record on August 15, 2019, for the portions of the NFMMDP affecting private lands and BLM-administered lands. *See* FED022657 (Decision Record for the NFMMDP). The Forest Service issued the Decision Notice for the NFMMDP approving Surface Use Plans of Operations on January 10, 2020. *See* FED022677 (Decision Notice for the NFMMDP). BLM issued a second decision record for portions of the project on National Forest System lands on January 27, 2020. *See* FED022551 (Second Decision Record for the NFMMDP).

Plaintiffs filed their Petition for Review of Agency Action on May 10, 2021, challenging the BLM and Forest Service decisions. Pet., ECF No. 1. Plaintiffs allege that BLM and the Forest Service violated NEPA by failing to take a hard look at the impacts

---

[1] All citations to "FED#####" are references to the administrative record lodged with the Court on November 26, 2021. ECF No. 15.

of the NFMMDP on greenhouse gas emissions and climate change and failing to analyze a reasonable range of alternatives. *Id.* ¶¶ 117-142. Plaintiffs filed their Opening Brief on December 17, 2021. ECF No. 17.

Based on additional review and evaluation, BLM has identified substantial concerns with the NEPA analysis underlying the challenged NFMMDP approval decisions, including the analysis of the potential impact of the new wells on emissions of greenhouse gases such as methane. Att. 1, BLM Declaration of Stephanie Connolly ("BLM Decl.") ¶ 6. To ensure compliance with NEPA and new applicable policies, BLM intends to prepare supplemental NEPA analysis for the NFMMDP. *Id.* ¶ 7. The supplemental analysis will be made available for public comment, and the public comments will be considered before BLM finalizes the analysis. *Id.* Upon completion of the supplemental NEPA analysis, BLM and the Forest Service will review the decisions and decide whether to affirm their original decisions for the NFMMDP, issue new decisions for the plan area, or conduct additional NEPA analysis. *Id.* ¶ 8.

## ARGUMENT

Because BLM has identified substantial concerns with the NEPA analysis underlying the challenged decisions and BLM and the Forest Service are undertaking a process to address those concerns, the Court should remand the decisions to the agencies to allow BLM and the Forest Service to reconsider them via the administrative process. The Court should not vacate the NFMMDP in the interim because it has not made a decision on the merits; this motion seeks remand in lieu of a merits decision, to allow BLM to address its concerns in the first instance. Vacatur also would be unnecessarily

disruptive to the operator, Intervenor-Defendant, which holds existing well permits that are not at issue in this litigation.

I.      **The Court Should Remand the Challenged Decisions to the Agencies.**

Remand is appropriate here because BLM has identified substantial concerns with the NEPA analysis underlying the challenged NFMMDP and both BLM and the Forest Service intend to reconsider their decisions through their own administrative processes.

"[A]dministrative agencies have an inherent authority to reconsider their own decisions, since the power to decide in the first instance carries with it the power to reconsider." *Trujillo v. Gen. Elec. Co.*, 621 F.2d 1084, 1086 (10th Cir. 1980) (citing *Albertson v. FCC*, 182 F.2d 397, 399 (D.C. Cir. 1950)). A remand is "generally required" if "intervening events outside of the agency's control" "affect the validity of the agency action." *SKF USA Inc. v. United States*, 254 F.3d 1022, 1028 (Fed. Cir. 2001). But "even if there are no intervening events, the agency may request a remand (without confessing error) in order to reconsider its previous position." *Id*. at 1029; *see also TransWest Express LLC v. Vilsack,* 2021 WL 1056513, at *5 (D. Colo. Mar. 19, 2021). Courts "generally grant an agency's motion to remand so long as 'the agency intends to take further action with respect to the original agency decision on review.'" *Util. Solid Waste Activities Grp. v. Env't Prot. Agency*, 901 F.3d 414, 436 (D.C. Cir. 2018) (citation omitted); *see also Coal. of Arizona/New Mexico Cntys. for Stable Econ. Growth v. Salazar*, No. 07-CV-00876 JEC/WPL, 2009 WL 8691098, at *3 (D.N.M. May 4, 2009) (noting that "federal courts 'commonly' grant agency motions for voluntary remand" (quoting *Ethyl Corp. v. Browner*, 989 F.2d 522, 524 (D.C. Cir. 1993))).

An agency need not confess error to seek and receive a voluntary remand. *See, e.g., SKF USA*, 254 F.3d at 1029; *Ethyl Corp.*, 989 F.2d at 524; *Citizens Against Pellissippi Parkway Extension, Inc. v. Mineta*, 375 F.3d 412, 417 (6th Cir. 2004). Rather, remand is appropriate if an agency has identified "a substantial and legitimate" concern regarding the challenged decision. *See SKF USA*, 254 F.3d at 1029; *TransWest,* 2021 WL 1056513 at *3; *Ctr. For Native Ecosystems v. Salazar*, 795 F. Supp. 2d 1236, 1239 (D. Colo. 2011). Remanding where an agency has identified such a concern allows agencies "to cure their own mistakes" consistent with their inherent authority to reconsider, and conserves judicial resources. *Ethyl Corp.*, 989 F.2d at 524.

BLM and the Forest Service satisfy these requirements here. First, BLM has identified "substantial and legitimate concerns" with its decision authorizing development of up to 35 new oil and gas wells and associated infrastructure in accordance with the NFMMDP. More specifically, BLM has identified substantial concerns regarding the NEPA analysis underlying the challenged NFMMDP decisions, including the analysis of the potential impact of the new wells on greenhouse gas emissions such as methane. BLM Decl. ¶ 6. These concerns substantially overlap with the issues raised by Plaintiffs in their claims challenging the NFMMDP decisions. *See* Plaintiffs' Opening Brief, ECF No. 17 at 19-32 (challenging BLM's consideration of the impacts of greenhouse gases on climate change).

Second, BLM intends to undertake a specific administrative process to address its concerns. *See Limnia, Inc. v. U.S. Dep't of Energy*, 857 F.3d 379, 387 (D.C. Cir. 2017) (An agency does not need to "confess error or impropriety in order to obtain a voluntary

remand" so long as it has "profess[ed] [an] intention to reconsider, re-review, or modify the original agency decision that is the subject of the legal challenge."). BLM will prepare supplemental NEPA analysis for the NFMMDP decisions. BLM Decl. ¶ 7. Once it finalizes the supplemental analysis, the agencies will review their prior decisions for the NFMMDP. *Id.* ¶ 8.

Remand is also in the interest of judicial economy and is consistent with an agency's inherent authority to reconsider its own decision in the first instance. Allowing BLM to address its serious concerns about the NFMMDP NEPA analysis through the administrative process will preserve this Court's and the parties' resources. *See Util. Solid Waste*, 901 F.3d at 436; *see also B.J. Alan Co. v. Interstate Com. Comm'n*, 897 F.2d 561, 562 n.1 (D.C. Cir. 1990) ("[A]dministrative reconsideration is a more expeditious and efficient means of achieving adjustment of agency policy than is resort to the federal courts." (quoting *Pa. v. Interstate Commerce Comm'n*, 590 F.2d 1187, 1194 (D.C. Cir. 1978))). In contrast, continuing to litigate the very same issues that BLM and the Forest Service are currently reconsidering would be inefficient and a waste of limited judicial resources. *See TransWest Express*, 2021 WL 1056513, at *5. Continuing to litigate this case would also interfere with the ongoing reconsideration process by forcing the agencies to structure their administrative processes around pending litigation, rather than the agencies' priorities and expertise. *See Am Forest Res. Council v. Ashe*, 946 F. Supp. 2d 1, 43 (D.D.C. 2013) (noting that because the agency did "not wish to defend" the action, "forcing it to litigate the merits would needlessly waste not only the agency's resources but also time that could instead be spent correcting the rule's deficiencies");

*TransWest Express*, 2021 WL 1056513, at *3 (noting courts should generally grant a voluntary remand lest "judicial review is turned into a game in which an agency is 'punished' for procedural omissions by being forced to defend them well after the agency has decided to reconsider" (quoting *Citizens Against Pellissippi Parkway*, 375 F.3d at 416)).

Finally, voluntary remand would serve the public interest because, as the Sixth Circuit has explained, an agency's "reconsideration of the potential environmental impacts of a project furthers the purpose of NEPA." *Citizens for Pellissippi Parkway*, 375 F.3d at 418. Here, additional analysis and public input would advance the "twin aims" of NEPA, that is, facilitating informed agency decisionmaking and promoting public involvement. *N. M. ex rel. Richardson v. Bureau of Land Mgmt.*, 565 F.3d 683, 703 (10th Cir. 2009) (quoting *Balt. Gas & Elec. Co. v. Nat. Res. Def. Council*, 462 U.S. 87, 97 (1983)).

For all of these reasons, the Court should remand the NFMMDP decisions to BLM and the Forest Service for reconsideration through the administrative process.

**II.     The Court Should Remand the Challenged Decisions Without Vacatur.**

In issuing a remand, courts retain discretion to fashion appropriate remedies. *See* 5 U.S.C. § 702 (nothing in the Administrative Procedure Act affects "the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground"). Here, remanding without vacatur is appropriate for three reasons.

First, Federal Defendants seek remand in lieu of a decision on the merits, and the Court lacks authority to "order vacatur . . . without an independent determination that [the

8

challenged decisions were] not in accordance with the law." *Carpenters Indus. Council v. Salazar*, 734 F. Supp. 2d 126, 135 (D.D.C. 2010). Although some courts in this Circuit have considered the "seriousness" of a challenged agency action's "deficiencies" in determining whether to vacate before a merits decision, *see, e.g., Navajo Nation*, 2021 WL 4430466, at *3, in a remand prior to a merits decision, a court has not yet found a violation of the law and therefore has no basis to vacate. *See Carpenters Indus.*, 734 F. Supp. 2d at 135 (citing 5 U.S.C. § 706(2)); *see also TransWest Express*, 2021 WL 1056513, at *5 ("If the Court were to remand with vacatur, the Court would irrevocably disrupt the status quo. Such a vast reshuffling of the parties' interests would be plainly inappropriate at this stage, particularly because the Court has not yet made any findings about whether the NRCS's actions were erroneous."); *WildEarth Guardians v. Bernhardt*, No. CV 20-56 (RC), 2020 WL 6255291, at *1 (D.D.C. Oct. 23, 2020) ("The Court remands the decisions without vacatur because it has not reviewed the EAs, FONSIs, and DNAs underlying the leasing decisions—therefore, it has no basis to vacate the agency action."). Even if the Court could reach the merits and consider the alleged deficiencies of the challenged decisions as a matter of law for purposes of determining whether to vacate, doing so would undermine a principal rationale for remand: "preserv[ing] scarce judicial resources by allowing agencies 'to cure their own mistakes.'" *Carpenters Indus.*, 734 F. Supp. 2d at 132 (quoting *Ethyl Corp.*, 989 F.2d at 524). It makes little sense for the Court to undertake an evaluation on the merits of decisions that the agency is revisiting.

Second, vacatur here would constitute a "disruptive . . . interim change that may itself be changed." *Navajo Nation*, 2021 WL 4430466, at *3 (quoting *Allied-Signal, Inc. v. United States Nuclear Regul. Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993)). BLM has approved six applications for permits to drill ("APDs") in the project area since approval of the NFMMDP, each with a permit term of two years, and the potential to be extended for an additional two years. BLM Decl. ¶ 5; BLM Onshore Order No. 1, 72 Fed. Reg. 10328, 10335 (March 7, 2007). To date, the operator has drilled one well, and the well is producing oil and gas. BLM Decl. ¶ 5. While approval of an MDP is not required in all instances before approval of APDs, if an operator chooses to propose an MDP, the approval processes are interrelated. *See* 72 Fed. Reg. at 10335. Vacatur of the NFMMDP would prematurely call into question the status of the permits, when the Court has not made a decision on the merits. Therefore, vacatur would be unnecessarily disruptive to the operator, particularly if the agencies were to ultimately affirm some or all of the challenged decisions.

Third and finally, any prejudice to Plaintiffs stemming from a remand without vacatur is limited here. BLM will conduct supplemental analysis for the NFMMDP decisions precisely to ensure compliance with NEPA, as Plaintiffs themselves seek in their Petition. *See* Pet. ¶¶ 118-131, ECF No. 1. Equally important, the NFMMDP itself does not authorize the drilling of any new oil and gas wells. For any new well an operator wishes to develop, it must submit to BLM, and the agency must approve, the APD, which itself must be supported by sufficient NEPA analysis. 43 C.F.R. §§ 3162.3-1(a), (c), 3162.5-1(a); *see also Pennaco Energy v. U.S. Dep't of Interior*, 377 F.3d 1147, 1151-52

(10th Cir. 2004). Because BLM must ensure NEPA compliance before approving any additional APDs, and because Plaintiffs retain the ability to challenge any other final BLM decisions, including approval of APDs and any new decision(s) that may result from the supplemental analysis and reconsideration process, remand without vacatur is not prejudicial.

## CONCLUSION

Because BLM has identified substantial concerns with the NEPA analysis underlying the NFMMDP decisions and BLM and the Forest Service intend to review those decisions through their administrative processes, the Court should remand to the agencies without vacatur.

Respectfully submitted this 18th day of February, 2022.

        TODD KIM
        Assistant Attorney General
        Environment & Natural Resources Division

        */s/ DRAFT*
        LEILANI DOKTOR, admitted to HI Bar
        United States Department of Justice
        150 M Street NE
        Washington, D.C. 20002
        Tel.: (202) 305-0447
        Fax: (202) 305-0506
        leilani.doktor@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2022, I filed the foregoing electronically through the CM/ECF system which caused all parties or counsel to be served by electronic means as more fully reflected on the Notice of Electronic Filing.

                                           */s/ Leilani Doktor*
                                           Attorney for Federal Defendants