IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Marcia S. Krieger

Civil Action No. 21-cv-01268-MSK

**CITIZENS FOR A HEALTHY COMMUNITY,
HIGH COUNTRY CONSERVATION ADVOCATES,
WILDERNESS WORKSHOP,
CENTER FOR BIOLOGICAL DIVERSITY, and
WILDEARTH GUARDIANS,**

 Plaintiffs,

v.

**UNITED STATES DEPARTMENT OF INTERIOR,
UNITED STATES BUREAU OF LAND MANAGEMENT,
UNITED STATES FOREST SERVICE, and
GUNNISON ENERGY, LLC,**

 Defendants.

## OPINION AND ORDER REMANDING ACTION

 **THIS MATTER** comes before the Court pursuant to the governmental Defendants' Motion to Remand **(# 21)**, the Plaintiffs' response **(# 22)**, Defendant Gunnison Energy's response **(# 23)**, and the governmental Defendants' reply **(# 26)**.

 This action concerns a challenge by various environmental advocacy organizations to decisions in 2019 and 2020 by the U.S. Department of the Interior, Bureau of Land Management, and U.S. Forest Service (collectively, the "Agencies"). The Agencies approved a master development plan ("the Plan") concerning oil and gas development activities in the North Fork Valley of Colorado's Western Slope. Defendant Gunnison Energy is the proponent of the Plan and the mineral leaseholder of the lands in question. Greatly summarized, the Plaintiffs' claims asserted that the Agencies violated the Administrative Procedure Act ("APA") and the National

1

Environmental Policy Act ("NEPA") because the Agencies failed to adequately consider the effects that approval of the Plan would have on greenhouse gas emissions and climate change and because the Agencies failed to consider a range of reasonable alternatives to the Plan.

After the Plaintiffs filed their opening brief, the Agencies filed the instant Motion to Remand **(# 21)**.  The Agencies report that "[b]ased on additional review and evaluation, [they] had] identified substantial concerns with the NEPA analysis underlying the [ ] approval decisions, including the analysis of the potential impact of the new wells on emissions of greenhouse gasses such as methane."  The Agencies explain that they intend to "prepare [a] supplemental NEPA analysis for the [Plan]" and engage in public notice and comment procedures for that analysis.  Based on that supplemental analysis, the Agencies would then "decide whether to affirm their original decisions [ ], issue new decisions for the plan area, or conduct additional NEPA analysis."  The Agencies ask that this Court remand the challenged decisions back to the Agencies for the purpose of further consideration.  However, the Agencies also request that the Court effectuate that remand without actually vacating the Agencies' decisions approving the Plan.  The Agencies explain that "vacatur here would constitute a disruptive interim change" because the Agencies have already "approved six Applications For Permits to Drill in the project area, each with a permit term of two years, and the potential to be extended for an additional two years."  The Agencies noted that "to date, the operator has drilled one well" that is currently producing.  The Agencies argue that "vacatur of the [plan approval] would prematurely call into question the status of the permits when the Court has not made a decision on the merits.  Therefore, vacatur would be unnecessarily disruptive to the operator, particularly if the agencies were to ultimately affirm some or all of the challenged decisions."

Although the Plaintiffs do not oppose the Agencies' request for remand, the Plaintiffs

oppose **(# 22)** the Agencies' request that a remand occur without vacatur of the underlying decision.  They argue that vacatur is "the usual remedy for an agency action that fails to comply with NEPA" and that remand without vacatur is appropriate only in "limited circumstances," such as where vacatur would pose a greater potential for environmental harm during the remand.  The Plaintiffs contend that vacatur is appropriate here because the NEPA violation committed by the Agencies is serious and that any disruption to Gunnison Energy's interest in continuing to operate the well(s) already approved by the Agencies would be only a "temporar[y] inconvenience," whereas allowing the well(s) to continue to operate would result in continuing environmental disruption.

Gunnison Energy also responded **(# 23)** to the Agencies' motion.  Gunnison Energy opposes the Agencies' request for a remand, arguing that the Agencies have not adequately explained the reasons why they were changing their prior position defending the approval of the Plan and contend that the Agencies' request does not give due consideration to Gunnison Energy's reliance interests in its ongoing plans to develop the leased areas.  But Gunnison Energy concurs with the Agencies' request that any remand, if one is granted, be without vacatur of the Agencies' existing approval of the Plan.  It argues that there is a "serious possibility" that the Agencies, upon re-evaluation, will nevertheless choose to again approve the plan and that allowing the plan to remain in effect will result in no further environmental impacts because any construction of new wells would require independent NEPA analysis and approval.

**A.  Remand**

The APA provides that, when an agency decision is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," the court "shall . . . hold unlawful and set aside [the] agency action."  5 U.S.C. § 706(2)(A).  The Supreme Court has explained

that, where an agency's action has not satisfied the APA's requirements, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."[1]  *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985).

Gunnison Energy does not particularly argue that, as a substantive matter, the Agencies' concession that their analysis was inadequate under NEPA is incorrect.[2]  Rather, Gunnison Energy's opposition to the Agencies' request for remand is based on the argument that the Agencies have not adequately explained their reasons for "do[ing] an about-face" on their decision, and that they have "not discuss[ed] any scientific of legal authority with which the [prior] analysis [ ] is inconsistent" or identified "any new factual findings that require reversal of [their] earlier findings or call the agencies' previous conclusions into doubt."  It argues that "an agency changing course must supply a reasoned analysis indicating that prior policies and

---

[1]     It may be tempting to read *Florida Power & Light*'s "except in rare circumstances" language to suggest that there may be unusual cases where an agency's flawed decisionmaking might result in some remedy short of remand for further agency analysis.  But cases discussing the "rare circumstances" standard are typically considering a different question: whether the reviewing court should not only remand the decision back to the agency, but also direct the agency to take additional steps as part of that remand.  For example, in *Middle Rio Grande Conservancy Dist. v. Norton*, 294 F.3d 1220, 1226 (10th Cir. 2002), the court explained that "a reviewing court normally remands when it finds an agency's decision [is] arbitrary and capricious," but that "in rare circumstances,  [ ] a remand is not appropriate."  The court found that *Middle Rio Grande* "represents one of those rare circumstances."  The "rare circumstances" the court found were that the agency's "delayed and inadequate compliance with NEPA and [the Endangered Species Act]" had pushed an endangered species "perilously close to extinction."  As a result, the court's remedy was not only to remand the matter back to the agency for further consideration, but to also take the additional step of ignoring "the general rule that the decision to conduct a[ thorough Environmental Impact Statement] is committed to the administrative agency in the first place," and specifically require the agency to take that step.  The court's belief was that the circumstances were so dire that a general remand would allow the agency "the opportunity to conduct yet another [abbreviated Environmental Assessment]" instead and that such further delay "would not accomplish" the statutes' purposes.  *Id.* at 1226-1231.

[2]     Gunnison Energy appears to make an abbreviated argument that the Agencies' analysis of greenhouse gas emissions was sufficient to comply with NEPA requirements.  *See Docket* # 23 at 9-10.  But it goes on to note that "the Court need not resolve the merits of any of these issues."

standards are being deliberately changed, not casually ignored." *Citing Greater Boston Television Corp v. Fed. Communications Commission*, 444 F.2d 841, 852 (D.C. Cir. 1970).

*Greater Boston* does not stand for the proposition that a federal agency must give a reason before deciding to concede an APA lawsuit and request voluntary remand. *Greater Boston* concerned a challenge to the Federal Communications Commission's decision, after an evidentiary hearing, to award a broadcast license to one applicant over three competing applicants. The other applicants appealed the Commission's decision to the D.C. Circuit, and the court affirmed. The court's opinion does not clearly identify the procedural statutory or regulatory vehicle that allowed the appeal, but the court's description of the nature of the review it was conducting is unmistakably similar to the standards that modern courts apply in reviewing major federal agency actions under the APA. That is, statements in *Greater Boston* like "the function of the court is to assure that the agency has given reasoned consideration to all the material facts and issues," an "insistence that the agency articulate with reasonable clarity its reasons for decision, and identify the significance of the crucial facts, a course that tends to assure that the agency's policies effectuate general standards, applied without unreasonable discrimination," and that "[i]f satisfied that the agency has taken a hard look at the issues with the use of reasons and standards, the court will uphold its findings, though of less than ideal clarity, if the agency's path may reasonably be discerned" are the same standards that this Court would apply in determining the merits of the Plaintiffs' challenge to the Agencies' approval of the Plan here. 444 F.2d at 851; *compare e.g. WildEarth Guardians v. Conner*, 920 F.3d 1245, 1256-57 (10th Cir. 2019) ("short of a clear error of judgment, we ask only whether the agency took a 'hard look' at information relevant to the decision"); *Gunderson v. U.S. Department of Labor*, 601 F.3d 1013, 1022 (10th Cir. 2010) ("Where an agency has failed ... to explain the path

5

it has taken, we have no choice but to remand for a reasoned explanation"). These standards apply to the Court's <u>substantive</u> evaluation of the merits of a challenge to a major, final agency action, not to every isolated and trivial decision an agency might make.

An agency action is reviewable under the APA if it: (i) has a direct and immediate impact; (ii) marks the consummation of the decisionmaking process; and (iii) determines rights or obligations from which legal consequences flow. *See Colorado Farm Bureau*, 220 F.3d 1171, 1173 (10th Cir. 2000); *see also* 5 U.S.C. § 551(13) (defining "agency action" to constitute "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof"). The Agencies' decision to concede the Plaintiffs' claims in this case and accept remand of the matter for further analysis satisfies none of these elements. Except as might be addressed below with regard to the issue of vacatur, the decision to remand and reconsider the approval of the Plan has no direct and immediate consequences. Rather, direct and immediate consequences will arise only after the Agencies have completed their supplemental analysis and issue a new decision adopting, modifying, or rejecting the Plan. A decision to concede the case and accept remand is not the result of any "decisionmaking" process by the Agencies, at least of a process that susceptible to APA-style review. The Agencies' evaluation of the strength and weaknesses of their legal position is not a matter subject to public notice or comment, or even one for which an administrative record may be compiled without intruding upon attorney-client privilege. And although it may be that certain narrow rights and obligations flow from the Agencies' concession of the Plaintiffs' arguments, those rights and obligations are limited to the boundaries of this particular case. Once again, neither Gunnison Energy's nor any other person or entity's rights are affected by the Agencies taking another look at the process by which the Plan was approved. Those rights and obligations are affected only once the Agencies make a new determination

regarding whether to adopt, modify, or reject the Plan.  Remand is simply a procedural step that is necessary to allow the Agencies to engage in actual substantive decisionmaking.

Gunnison Energy has not pointed to any authority, binding or persuasive, that squarely finds that a federal agency is required to give detailed reasons before it may confess error and request a remand in an APA action.  Nor would such a proposition be particularly sensible.  Disputes about the sufficiency of an agency's reasons for conceding a case would simply create yet another layer of unnecessarily litigation to be pursued,[3] expending all parties and the Court's resources for no substantive purpose, potentially forcing a party to defend a legal position that the party does not actually believe.  Accordingly, the Court grants the Agencies' request for remand of this matter.

**B.  Vacatur**

The Agencies request that this Court remand the matter for further consideration, but that the Court not vacate the adoption of the Plan in the course of doing so.  Vacatur of a decision alongside a remand is the ordinary remedy and a remand without vacatur is appropriate "only in limited circumstances" and "where equity demands" it.  *Pollinator Stewardship Council v. E.P.A.*, 806 F.3d 520, 532 (9th Cir. 2015). A reviewing court considering whether to vacate an agency ruling in conjunction with a remand should examine several factors, including (i) "how serious the agency's errors are"; (ii) "the disruptive consequences of an interim change that may

---

[3]  Indeed, the potential for infinite recursion is manifest.  If Gunnison Energy is correct and this Court must decide whether the Agencies have given a satisfactory reason for confessing the Plaintiffs' claims, the Agencies might decide that fighting off Gunnison Energy's arguments is too burdensome in itself and the Agencies might choose to confess their own motion for remand.  But if the decision to concede error and accept remand is one that requires an explanation satisfactory to the Court, so must be the Agencies' decision to withdraw their Motion for Remand.  This would invite the Plaintiffs to complain that the Agencies' confession of their motion also fails to give adequate reasons for the Agencies' "about-face" of their earlier "about-face," requiring <u>that</u> issue to be litigated and resolved by the Court.  And so on and so on.

7

itself by changed"; (iii) "whether the agency would likely be able to offer better reasoning or . . . adopt the same rule on remand, or whether such fundamental flaws in the agency's decision make it unlikely that the same rule would be adopted on remand"; and (iv) whether vacating a faulty rule could result in possible environmental harm." *National Family Farm Coalition v. U.S. Environmental Protection Agency*, 966 F.3d 893, 929 (9th Cir. 2020); *see also Allied-Signal, Inc. v. U.S. Nuclear Reg. Comm'n.*, 988 F.2d 146, 150-51 (D.C. Cir. 1993). Unfortunately, most of these factors are not well-developed in the instant record.

1. Seriousness of the agency's errors/likelihood of the same decision

The first and third factors – the seriousness of the analytical defects confessed by the Agencies and the degree to which the Agencies might adopt the same rule on remand – are somewhat obscured here by the vagueness of the details suppled by the Agencies in their motion. The Agencies' motion is supported solely by the affidavit of Stephanie Connelly of the Bureau of Land Management, who states merely that her agency "has identified substantial concerns with the NEPA analysis underlying the challenged [ ] decisions, including the analysis of the potential impact of the new wells on emissions of greenhouse gasses such as methane." She does not elaborate on the nature, extent, or significance of the errors nor give any indication as to the Agencies' expectations as to the outcome of their supplemental analysis. Thus, as far as identifying the nature and seriousness of the Agencies' errors goes, the Court is left only with the arguments in the Plaintiffs' Opening Brief **(# 17)**.[4] Those arguments, not surprisingly, paint the Agencies' analytical defects as being substantial. The Plaintiffs contend that the Agencies'

---

[4] In their reply brief, the Agencies argue that they "have outlined a clear process for revisiting their analysis," and that therefore "there remains a serious possibility that the agencies will affirm their prior decisions through this supplemental analysis." But the existence of a process for engaging in a supplemental analysis does not imply anything about the outcome of that process.

8

estimate of methane emissions – a potent greenhouse gas – was understated by 142%.  *Docket #  17 at 26*.  The Plaintiffs argue that the Agencies ignored not just "near term" effects of climate change but ignored documented evidence of adverse climate change effects already occurring.  *Docket #* 17 at 19-21.  The Plaintiffs argue that the Agencies are obligated to consider not just the incremental effects of the 35 gas wells proposed under the plan, but the cumulative impact of "emissions from the BLM's entire oil and gas program – including emissions from all 96,000 active producible wells managed by BLM."  *Docket #* 17 at 24.  In the absence of competing arguments, the Court must conclude that the errors cited by the Plaintiffs are serious and substantial.

As to the likelihood that the Agencies will nevertheless decide to again approve the Plan (or to approve it with only minor modifications), the Court cannot necessarily conclude that there is "no serious possibility" that the Agencies reach the same decision, and that factor thus weighs against vacatur.[5]  *See WildEarth Guardians v. Zinke*, 368 F.Supp.3d 41, 84 (D.D.C. 2019).  At the same time, the Court will not presuppose that the Agencies supplemental analysis is a foregone conclusion.  In the absence of any indication of the Agencies' expectations as to how the supplemental analysis will proceed, there is an equally-serious possibility that, upon consideration of all relevant matters, the Agencies might reach a different decision on the Plan.  As such, the first and third factors are largely in equipoise – although there is some possibility that the Agencies will ultimately affirm their prior decision, the analytical defects the Plaintiffs have identified are serious and substantial and raise the possibility that the Agencies might instead choose to materially modify the plan or overturn it entirely.  These factors neither favor

---

[5]  Put differently to avoid the double negative of the "no serious possibility" standard, the Court finds that there is a meaningful possibility that the Agencies will, upon further analysis of all relevant considerations, still decide to approve the Plan.

nor discourage vacatur pending remand.

## 2. Disruption of existing expectations

The second factor – the disruptive effects that vacatur might have – is also one that is raised but not well-developed by the Agencies (and by Gunnison Energy). It is undisputed that the Agencies have approved and Gunnison Energy has constructed a single well that has been drilled and is currently producing. The Agencies have also approved permits for up to six additional wells, but the Court infers from the record that Gunnison Energy has not yet begun drilling those wells. Beyond these facts, the record is largely silent as to the disruptive effects that would result from vacatur of the Agencies' approval of the plan. The Court can assume that vacatur would result in Gunnison Energy staying its plans to drill the six new permitted wells and even taking steps to cease production on the existing well,[6] but the record does not detail the degree of difficulty or expense attendant to such actions.

Gunnison Energy has tendered the affidavit of its President, Salar Nabavian, who states that: (i) Gunnison Energy is "required to drill additional wells to meet [its] obligations under its federal leases"; (ii) that it intends to install additional infrastructure beginning in or about May 2022 to service existing and future wells; (iii) that its installation of that infrastructure is only economically-justified if Gunnison Energy "can drill the remaining wells contemplated under [the Plan]"; and (iv) that it "has already begun to enter into enforceable contracts with vendors and service providers to support [its] anticipated operations." Notably, the third point – that

---

[6] The Court emphasizes that this is no more than the Court's own assumption. The Agencies' briefing discusses the disruptive effects of vacatur at a high level of abstraction, stating only that vacatur would "call into question the status of permits" that have already been issued, not describing the specific consequences that would result from vacatur. Likewise, Gunnison Energy's opposition to vacatur speaks generally of "reliance interests" that might be impaired if the decision adopting the Plan was vacated pending remand, but it never squarely states that vacatur would prevent it from continuing to operate the existing well.

Gunnison Energy's activities only have economic justification if all the wells contemplated by the Plan are eventually drilled – seems to concede that Gunnison Energy will suffer unspecified economic and logistical disruptions if the Plan is modified <u>in any meaningful way</u> by the Agencies' reconsideration, or even if this Court were even <u>partially</u> vacate the Agencies' decision pending remand (such as leaving the Plan approval in place for purposes of the existing well, but staying any new drilling and infrastructure construction or development on the six approved drilling permits).  *See e.g. WildEarth Guartians*, 368 F.Supp.3d at 85 (refusing to vacate leasing decision but enjoining the BLM from issuing any further drilling permits based on the challenged decision pending remand).  Because some some degree of disruption to Gunnison Energy appears to be inevitable unless Gunnison Energy is allowed to forge ahead unabated on the strength of a Plan that the Agencies concede was erroneously approved, the Court finds that this factor is at best neutral and may indeed even tip slightly  in favor of vacatur.[7]

3. <u>Environmental harm during remand</u>

Finally, the Court considers the question of the degree to which environmental harm will occur if the decision is not vacated pending remand.  The Plaintiffs make a cursory argument that vacatur of the Plan pending remand would "avoid irreversible environmental harm during the pendency of the remand," but do not particularly explain how they reach that conclusion.  Assuming (without necessarily finding) that the operation of oil and gas wells can have environmental consequences, the Plaintiffs have not shown that the environmental effects of operating the one (or seven) wells at issue here are sufficiently significant, on their own, to

---

[7]     Notably, the Agencies state that approval of the Plan "is not required in all instances before approval of [permits to drill]" may be granted.  This suggests that, even if the Court were to vacate the approval of the Plan, Gunnison Energy might be able to request, and the Agencies might approve, request for permission to drill nevertheless.  In these circumstances, it would seem that Gunnison Energy might not suffer any meaningful disruption from vacatur of the Plan.

materially affect the question of whether the Plan should be vacated. This factor is therefore mostly neutral.

Taken as a whole, then the *Allied Signal* factors do not point strongly in either direction. In such circumstances, in the absence of circumstances that strongly suggest that the atypical remedy of remand without vacatur is appropriate, the Court is inclined to follow the ordinary path and vacate the Agencies' approval of the Plan pending completion of the remand.

There remains one final argument made by the Agencies and Gunnison Energy. They contend that vacatur is an inappropriate remedy unless and until the Court makes a finding on the merits that the agency decision was unlawful. *Citing Carpenters Indus. Council v. Salazar*, 734 F.Supp.2d 126, 135-36 (D.D.C. 2010). Here, they argue, the Agencies have voluntarily requested remand and the Court need not (and should not) purport to make any finding on the merits of the Plaintiffs' substantive arguments. Thus, they argue this Court lacks the authority to vacate the approval of the Plan. The Court is unpersuaded.

*Carpenters* involved the question of whether the court should vacate a determination by the Fish and Wildlife Service ("FWS") pending the FWS' request for voluntary remand and reconsideration of that determination. The court gave two reasons for doing refusing to vacate the determination: (i) its belief that 5 U.S.C. § 706(2) authorizes vacatur only upon an "independent determination" by the court that the FWS' action was not in accordance with law; and (ii) its concern that vacating the determination pending remand "would all the Federal defendants to do what they cannot do under the APA, [that is] repeal a rule without public notice and comment [and] without judicial consideration of the merits." *See also Natl. Parks Conservation Assn. v. Salazar*, 660 F.Supp.2d 3, 4 (D.D.C. 2009). This Court does not find *Carpenters'* reasoning persuasive. Although it may be true that the Agencies could not, in

12

ordinary circumstances, modify or revoke the Plan they approved without first engaging in public notice and comment periods, the Court does not view this interim step of returning the Plan to the Agencies for further consideration to constitute a modification or revocation of a "final" agency decision that would require public notice and comment.  Like a baker returning a not-yet-cooked cake back to the oven, remand of the Plan back to the Agencies for further consideration simply postpones the unveiling of the proper finished product.  Although the guests might be salivating at the prospect of having a slice of cake, their desire should not prevent the baker from having the opportunity to fix the error of prematurely removing the cake from the oven.  Here, by the Agencies' own admission, the Plan should never have been approved in the first place because the Agencies' initial analysis of it was incomplete.  In this Court's view, allowing the agency the opportunity to fix the error is more important than forcing the public to abide by a decision that the agency concedes was improper.  Also, there is no indication here that the Agencies' confession of error and request for remand here is an attempt to revoke or modify the Plan while avoiding public notice and comment.  The Agencies have made clear that the public will have a full opportunity to comment on any decision that the Agencies make once they have completed their supplemental analysis.

      Moreover, as *Carpenters* notes, its position that a judicial finding of error on the substantive merits of the case is a precondition to vacatur is not universally adopted.  *Carpenters* concedes that other courts "have exercised their equitable power to summarily vacate" agency actions pending remand.  734 F.Supp.2d at 135, *citing Coalition of Arizona/New Mexico Counties for Stable Economic Growth v. Salazar*, 2009 WL 8691098 (D.N.M. May 4, 2009) (slip op.) ("the equitable analysis that applies to determine vacatur is the same whether or not the Court reaches the merits of the underlying rule prior to remand").  This Court finds the reasoning

13

of cases such as *Counties for Stable Economic Growth* to be more persuasive than *Carpenters*. The Agencies here have conceded that their decisionmaking process was incomplete. To suggest that the Court is prevented from vacating that erroneous decision simply because the Agencies confessed it to be so instead of defending it and forcing the Court to inevitably find as much needlessly ties the Court's hands when it comes to fashioning a remedy. The Agencies confess that the approval of the Plan on the instant record was not in accordance with NEPA's requirements and therefore, it is appropriate to vacate that approval pending the Agencies' reconsideration of it.

For the foregoing reasons, the Agencies' Motion for Remand **(# 21)** is **GRANTED IN PART AND DENIED IN PART**. The Court **VACATES** the Agencies' approval of the Plan and **REMANDS** the matter back to the Agencies for further consideration. The Clerk of the Court shall enter judgment in favor of the Plaintiffs and close this case.

Dated this 19th day of May, 2022.

BY THE COURT:

/s/ Marcia S. Krieger
_____

Marcia S. Krieger
Senior United States District Judge