**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:21-cv-1268

CITIZENS FOR A HEALTHY COMMUNITY;
HIGH COUNTRY CONSERVATION ADVOCATES;
WILDERNESS WORKSHOP;
CENTER FOR BIOLOGICAL DIVERSITY;
and WILDEARTH GUARDIANS,

    Plaintiffs,

v.

UNITED STATES DEPARTMENT OF INTERIOR;
UNITED STATES BUREAU OF LAND MANAGEMENT, an agency of the U. S. Department of Interior;
UNITED STATES FOREST SERVICE, an agency of the U.S. Department of Agriculture,

    Federal Defendants.

**PLAINTIFFS' PETITION FOR ATTORNEYS' FEES AND COSTS**

Plaintiffs Citizens for a Healthy Community, Center for Biological Diversity, High Country Conservation Advocates, WildEarth Guardians and Wilderness Workshop ("Conservation Groups") and Federal Defendants United States Department of Interior, Bureau of Land Management and the United States Forest Service, ("BLM" or the "Agencies") have conferred with respect to this Petition, and the Parties have agreed that the interests of both would be served by attempting to negotiate a settlement of Plaintiffs' fee claims. Concurrent with the filing of this motion, therefore, the parties will file a Joint Motion to Temporarily Stay Proceedings Related to Plaintiffs' Motion for Attorney Fees, Costs, and Other Expenses Under the Equal Access to Justice Act ("EAJA"), in which they request to stay proceedings on this motion for 90 days, in order to facilitate the

potential for a negotiated settlement as to Plaintiffs' fees and costs.[1] If they are unable to settle this matter, Conservation Groups will file an amended petition under EAJA on or before expiration of the stay. The Agencies oppose this Petition, but wish to attempt settlement of Plaintiffs' fee claims during the 90-day stay period.

At this time, Conservation Groups seek an order granting them their fees, costs, and litigation expenses in this matter pursuant to Local Rule 54 and EAJA. 28 U.S.C. § 2412(d). Conservation Groups respectfully request that this Court award them $141,722.50 in attorneys' fees and $58.80 in costs, for a total of $141,781.30.

This motion is based on the memorandum of points and authorities in support of this motion, the declarations and timesheets attached as exhibits in support of this motion, and all papers and records on file with the Clerk or which may be submitted before or at the time of any hearing, and any further evidence that may be offered.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.      INTRODUCTION**

Plaintiffs, five conservation organizations, filed this lawsuit on May 10, 2021 (ECF No. 1), to challenge the Agencies' approval of the North Fork Mancos Master Development Plan ("MDP"). Conservation Groups alleged violations of the National Environmental Policy Act ("NEPA") 42 U.S.C. §§ 4321 *et seq.* and implementing regulations made reviewable pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.* Specifically, Conservation Groups alleged that the Agencies had failed to take a hard look at climate change impacts from greenhouse

---

[1] In accordance with this Court's Order dated May 20, 2022 (ECF No. 32), Plaintiffs filed a Bill of Costs awardable under 28 U.S.C. § 1920 (ECF No. 33) and the Parties filed a stipulation of Costs (ECF No. 34). As a result, the nominal additional costs included in this Petition represent minor additional expenses in excess of those recorded in Plaintiff's Bill of Costs.

2

gas emissions, including from methane, that the Agencies had failed to consider a reasonable range of alternatives and conditions of approval to lessen impacts from development of the MDP, and that the Agencies' finding of no significant impact was arbitrary and capricious as a result of these failings. Conservation groups requested the Court to vacate and remand the MDP back to the Agencies, and to enjoin the Agencies from approving the development of oil and gas resources within the MDP until they had demonstrated compliance with NEPA. (ECF No. 1 at 41)

Conservation Groups filed their opening brief on December 17, 2021 (ECF No. 17). In response, the Agencies moved for voluntary remand without vacatur of the MDP (ECF No. 21). In their Motion, the Agencies acknowledged that BLM had "identified substantial concerns with the National Environmental Policy Act (NEPA) analysis underlying the challenged NFMMDP approval decisions, including the analysis of the potential impact of the new wells on emissions of greenhouse gases such as methane." (ECF No. 21-1, ¶6). Conservation Groups did not oppose the Agencies' motion for voluntary remand but requested that the Court vacate the MDP. (ECF No. 22). On May 20, 2022, this Court granted Conservation Groups' request, vacating the Agencies' approval of the MDP and remanding the decision back to the Agencies for further consideration. (ECF Nos. 31, 32).

## II. STANDARD

Pursuant to EAJA, a court shall award fees and costs to a prevailing party who is eligible for an EAJA fee award unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust. 28 U.S.C. § 2412(d).

//

### III. CONSERVATION GROUPS ARE ENTITLED TO FEES AND COSTS UNDER EAJA.

#### A. Conservation Groups are Eligible Under EAJA

The Tenth Circuit has noted that "EAJA was enacted to ensure people would not be deterred from seeking review of, or defending against, unreasonable government action because of the expense involved in pursuing their rights." *Pettyjohn v. Shalala*, 23 F.3d 1572, 1575 (10th Cir. 1994). EAJA provides that "a court shall award" fees, costs, and other expenses to a prevailing party who is eligible for an EAJA fee award, "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). A party is eligible for attorneys' fees, costs, and other expenses pursuant to EAJA if it: (1) is a "prevailing party"; that (2) incurred costs of litigation against the federal government; and (3) meets applicable size, net worth, or other criteria. 28 U.S.C. § 2412(d)(1)(A)-(d)(2)(B).

Conservation Groups satisfy the first criterion for eligibility under EAJA because they are "prevailing parties." Under the EAJA, a "prevailing party" is a party who is benefitted by a court order that causes a "material alteration of the legal relationship of the parties." *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Services*, 532 U.S. 598, 604 (2001) (citation omitted). Such an order must cause a plaintiff to "receive at least some relief on the merits of his claim before he can be said to prevail." *Id.* at 603 (citation omitted). A "material alteration in the parties' legal relationship occurs when "the plaintiff has succeeded on any significant issue in litigation which achieved some of the benefit the parties sought in bringing suit." *Kansas Jud. Watch v. Stout*, 653 F.3d 1230, 1235 (10th Cir. 2011)(quoting *Texas State Teachers Ass'n v. Garland Independent School District (TSTA )*, 489 U.S. 782, 791–92, 103 L.Ed.2d 866 (1989)).

4

Here, Conservation Groups achieved the result they sought in bringing the case—vacatur of the MDP and remand to the agency for further consideration. (ECF Nos. 1 at 41-42, 31 at 14).

Conservation Groups also satisfy the second criterion for eligibility: they incurred costs of litigation—including attorneys' fees, costs, and other expenses—in a judicial proceeding against a federal agency. These costs are detailed in the declarations of Melissa Hornbein, Kyle Tisdel and Barbara Chillcott, attached to this Petition as Exhibits 1 – 3, and the timesheets and accounting of costs attached thereto. Finally, Conservation Groups also satisfy the third criterion for eligibility related to IRS 501(c)(3) status. *See* 28 U.S.C. § 2412(d)(2)(B) (stating standard).

### B. The Agencies' Position Was Not Substantially Justified

"Once a party's eligibility has been proven, an award of fees is mandatory pursuant to EAJA unless the government's position is substantially justified or special circumstances exist that make an award unjust." *Love v. Reilly*, 924 F.2d 1492, 1495 (9th Cir. 1991) (*citing* 28 U.S.C. § 2412(d)(1)(A)). Here, the Agencies bear the burden of proving that their position was substantially justified. *Scarborough v. Principi*, 541 U.S. 401, 414 (2004). They must make a "strong showing" in order to meet this burden. *Nat. Res. Def. Council v. Envt'l Prot. Agency*, 703 F.2d 700, 712 (3rd Cir. 1983) (*citing* H.R. Rep. No. 1418 at 16, 18, 96th Cong., 2nd Sess. 8-9, *reprinted in* 1980 U.S. Code Cong. & Ad. News 4953, 4984, 4986-88).

To determine if an agency's position was substantially justified, the court considers the reasonableness of the underlying government action and the position asserted by the agency in defending its validity. *Hackett v. Barnhart*, 475 F.3d 1166, 1170-72 (10th Cir. 2007); *Commissioner, INS v. Jean*, 496 U.S. 154, 158 n.7 (1990) (noting that Congress intended to provide for fees when unjustifiable agency action forces litigation, even when agency tries to avoid liability by reasonable behavior during litigation). "[I]t will be only a decidedly unusual case in which there is substantial

5

justification under the EAJA even though the agency's decision was reversed as lacking in reasonable, substantial and probative evidence in the record." *Thangaraja v. Gonzales*, 428 F.3d 870, 874-75 (9th Cir. 2005) (citation omitted).

Here, although the Agencies did not explicitly admit that their approval of the MDP was unjustified, their motion for voluntary remand and admission that "BLM has identified substantial concerns with the NEPA analysis underlying the challenged NFMMDP approval decisions, including the analysis of the potential impact of the new wells on emissions of greenhouse gases such as methane," (ECF No. 21-1 at ¶6), is tantamount to such an admission. This court clearly recognized as much: "by the Agencies' own admission, the Plan should never have been approved in the first place because the Agencies' initial analysis of it was incomplete." (ECF No. 31 at 13). As such, the Agencies' actions in approving the MDP were not substantially justified.

### C. No Special Circumstances Exist that Would Make an Award Unjust

The "special circumstances" exception to eligibility under EAJA is a "'safety valve [that] … gives the court discretion to deny awards where equitable considerations dictate an award should not be made." H.R. Rep. No. 1418, 96th Cong., 2nd Sess. 5, 11, *reprinted in* 1980 U.S.C.C.A.N. 4984, 4990. "The burden of proving special circumstances … rests with the government." *Love*, 924 F.2d at 1495. There are no special circumstances in this case that would make an award unjust. *Cf. Meinhold v. U.S. Dept. of Defense*, 123 F.3d 1275, 1277 n.1 (9th Cir. 1997) (noting that the court considered a party's "bad faith" in its consideration under EAJA). Plaintiffs litigated this case in good faith and for purposes of ensuring that oil and gas development in the North Fork Valley—if it must occur—is conducted in the most environmentally protective and transparent manner possible. Therefore, an award of Plaintiffs' requested fees and costs under EAJA is in the interests of justice and the public interest.

## IV. CONSERVATION GROUPS SEEK REASONABLE HOURLY RATES

### A. Conservation Groups are Entitled to Enhanced Rates under EAJA

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). EAJA provides that a court shall award "reasonable attorney fees" to prevailing parties. 28 U.S.C. § 2412(d)(2)(A). EAJA sets a base rate of $125 per hour but provides that a court may award higher rates if it "determines that an increase in the cost of living or a special factor … justifies a higher fee." *Id.*

In general, courts defer to the billing judgment of the prevailing party's attorneys. *See, e.g., Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) (courts should "defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker."). However, a prevailing party's attorneys must omit non-compensable time. *Hensley*, 461 U.S. at 437. The defending federal agency has the burden of showing that any claimed time is unreasonable. *Blum v. Stenson*, 465 U.S. 886, 892 n.5 (1984). Once a fee applicant has filed evidence to support its claimed time, "[t]he party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates v. Deukmejian*, 987 F.2d 1392, 1397–98 (9th Cir. 1992).

"Where a plaintiff has obtained excellent results, [its] attorney should recover a fully compensatory fee." *Hensley*, 461 U.S. 435. Recognizing that the EAJA rates might be too low in some instances to enable a litigant to obtain competent legal representation, EAJA provides for fee enhancements where special factors, such as the limited availability of qualified attorneys for

7

the proceedings, are present. In *Pierce v. Underwood*, 487 U.S. 552, 572 (1988), the Supreme Court clarified that reimbursement above the EAJA rate is allowed where an attorney is "'qualified for the proceedings' in some specialized sense." According to the Supreme Court, such qualification consists of the possession of "distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in litigation. Examples of the former would be an identifiable practice specialty such as patent law, or knowledge of foreign law or language." *Pierce*, 487 U.S. at 572.

The Ninth Circuit has held that "[e]nvironmental litigation is an identifiable practice specialty that requires distinctive knowledge." *Love*, 924 F.2d at 1496. Further, "the combination of substantive legal knowledge and litigation expertise" necessary for litigation in environmental law "is found almost exclusively" in public interest environmental law firms. *Wash. Dep't of Wildlife v. Stubblefield*, 739 F. Supp. 1428, 1432 (W.D. Wash. 1989). Analogous rate enhancement has also been recognized by courts in this district. *See, e.g.*, *Hanson Colorado Farms P'ship v. Vilsack*, No. 11-CV-00675-RPM, 2012 WL 4336174, at *5 (D. Colo. Sept. 21, 2012)(recognizing representation of farmers in federal crop insurance claims as a specialized practice area warranting a rate enhancement under the EAJA); *Jagers v. Fed. Crop Ins. Corp.*, No. 10-CV-00956-RPM, 2012 WL 4336172, at *5 (D. Colo. Sept. 21, 2012)(accord); *see also*, *City of Las Cruces v. United States*, No. CV 17-809 JCH/GBW, 2021 WL 5926022, at *2 (D.N.M. Dec. 15, 2021) (recognizing CERCLA litigation as "specialized and complex" area supporting award of enhanced rates) (objections partially sustained and partially overruled on other grounds in *City of Las Cruces v. Lofts at Alameda, LLC*, No. CV 17-809 JCH/GBW, 2022 WL 3355830 (D.N.M. Aug. 15, 2022)).

A prevailing party seeking enhanced attorneys' fees under EAJA must satisfy three tests: (1) the attorneys must possess some distinctive knowledge and skills developed through a practice

8

specialty; (2) those distinctive skills must be needed in the litigation; and (3) those skills must not be available elsewhere at the statutory rate. *Love*, 924 F.2d at 1496. As summarized below and detailed in the accompanying declarations, Conservation Groups' attorneys possess distinctive knowledge and skills in environmental and administrative law. Conservation Groups' attorneys have extensive experience with federal statutes governing oil and gas development on federal lands, including the Mineral Leasing Act, as well as the federal permitting program for federal minerals. Conservation Groups' attorneys also have expertise with respect to issues of law and procedure under the APA, and the interplay between environmental and administrative law.

1. **Conservation Groups' attorneys possess distinctive knowledge and skills needed in this litigation that are unavailable elsewhere at the statutory rate.**

As detailed in their attached declarations, Conservation Groups' attorneys each possess distinctive knowledge and skills that were needed in the litigation and were unavailable elsewhere at the statutory rate. *See Love*, 924 F.2d at 1496 (stating standard); *Pollinator Stewardship Council v. U.S. EPA*, No. 13-72346, 2017 WL 3096105, at **2-7 (9th Cir. June 27, 2017) (applying standard and awarding enhanced fees).

a.     **Melissa Hornbein**

Melissa Hornbein is a senior attorney at the Western Environmental Law Center, where her practice is almost exclusively comprised of federal environmental litigation in the areas of climate and energy, with a focus on the federal oil, gas, and coal leasing programs. **Exhibit 1**, Declaration of Melissa Hornbein. Her practice also includes climate-related state court litigation and federal and state policy and administrative engagement on issues of climate change, energy development, and environmental law. She graduated from the University of California, Hastings College of Law in 2008 and obtained an M.S. in environmental studies from the University of

9

Montana in 2009, with the goal of practicing environmental law. Hornbein Decl. ¶2. From 2009 to 2010, Ms. Hornbein clerked at the Montana Supreme Court for then Justice Brian M. Morris. *Id.* at ¶3. From 2010 to 2015, she worked as an attorney at the Montana Department of Natural Resources and Conservation on multiple environmental law issues, including litigation under NEPA and other federal and state environmental statutes, federal and tribal water rights issues, and state land and natural resource issues. *Id.* at ¶4. From 2015 to 2019, Ms. Hornbein was an Assistant U.S. Attorney in the Civil Division of the U.S. Department of Justice, where she worked in part on federal environmental cases, including challenges to federal actions under NEPA and other environmental statutes. *Id.* at ¶5. Ms. Hornbein has distinctive knowledge and skills related to environmental litigation and a practice specialty in environmental law and has presented at continuing education seminars on issues of environmental and natural resources law. *Id.* ¶7.

### b. Kyle Tisdel

Kyle Tisdel has practiced state and federal environmental, land use, and property law for 16 years. **Exhibit 2**, Declaration of Kyle Tisdel. Mr. Tisdel is a 2002 graduate of Michigan State University and a 2005 graduate of Vermont Law School, where he was Editor-in-Chief of the Vermont Journal of Environmental Law. *Id.* at ¶2. Mr. Tisdel practiced law with a private law firm in the state of Washington, and as a solo practitioner, before joining the Western Environmental Law Center in 2011 as a staff attorney. *Id.* Mr. Tisdel's practice focuses on federal and state court environmental litigation, and he also serves as Director of the Climate & Energy Program at the Western Environmental Law Center. *Id.* at ¶3. Mr. Tisdel routinely presents at continuing legal education seminars on environmental law, in particular on topics relating to public lands, oil and gas leasing and development, tribal and cultural interests, as well as greenhouse gas emissions and

10

climate change. Mr. Tisdel has prosecuted many successful environmental cases as lead counsel in state and federal courts throughout the West. *Id.* ¶¶4-5.

### c. Barbara Chillcott

Ms. Chillcott is a senior attorney at the Western Environmental Law Center where her practice is primarily federal environmental litigation in the areas of climate and energy, with a focus on the federal oil, gas, and coal leasing programs. **Exhibit 3**, Declaration of Barbara Chillcott, ¶6. Her practice also includes federal policy engagement related to federal environmental, land use, and energy laws and climate-related state court litigation. *Id.* She graduated from the University of Montana School of Law in 2005. She attended law school with the intention of practicing environmental law. *Id.* at ¶ 4. After law school, Ms. Chillcott practiced exclusively environmental law for state government and non-profit entities for fifteen years prior to joining the Western Environmental Law Center. *Id.* at ¶5.

### 2. Conservation Groups Seek Reasonable Hourly Rates

Conservation Groups' counsel are entitled to market rates in the forum of Denver, Colorado for their time spent prosecuting this case. To ensure that they seek market rates consistent with those in Denver, Conservation Groups consulted with attorneys who regularly practice federal environmental and administrative law in that forum, and reviewed fee award decisions from the District of Colorado. *See, e.g., Villanueva v. Account Discovery Sys., LLC*, 77 F. Supp. 3d 1058, 1080 (D. Colo. 2015) ("A 'reasonable rate' is defined as the prevailing market rate in the relevant community for an attorney of similar experience.")(citing *Guides, Ltd. v. Yarmouth Grp. Prop. Mgmt., Inc.,* 295 F.3d 1065, 1078 (10th Cir. 2002); *Malloy v. Monahan,* 73 F.3d 1012, 1018 (10th Cir. 1996)). Conservation Groups also base their calculation of reasonable rates on consultation with Michael E. Lindsay, whose declaration is attached to this Petition as **Exhibit 4**.

Mr. Lindsay is a partner with the firm of Snell & Wilmer L.L.P., in its Denver office and has prior experience as an expert witness on attorneys' fees and cost applications and petitions. Lindsay Decl. ¶¶1, 4. Mr. Lindsay is also familiar with the attorneys and nature of work at the Western Environmental Law Center, as he previously served on the board of the organization. *Id.* at ¶¶7-8. Mr. Lindsay has reviewed Plaintiffs' fee request and has attested to the reasonableness of the rates sought for Plaintiffs' counsel as well as the amount of the overall fee award sought. *Id.* at ¶¶9-10. Mr. Lindsay has also expressed his willingness to testify at a hearing, if such testimony would be helpful to the Court. *Id.* at ¶11.

Plaintiffs have also reviewed cases from this circuit examining various "sources of evidence as to reasonable rates in the District of Colorado area." *See, e.g., Barnett v. Bd. of Cnty. Comm'rs of Montrose*, 2015 U.S. Dist. LEXIS 173770, at *13 (D. Colo. Dec. 14, 2015). Particularly applicable here, *Center for Biological Diversity v. U.S. Fish and Wildlife Serv.*, 703 F. Supp. 2d 1243, 1249-50 (D. Colo. 2010), was a "case focusing on environmental issues" that confirmed an hourly rate of $400 was appropriate in 2010 for "an experienced environmental litigator with over 17 years of experience." *Id., accord Wilderness Society v. Wisely*, 524 F. Supp. 2d 1285 (D. Colo. 2007)(awarding the same attorney $400/hr. based on the lodestar analysis).

More recent opinions, and the Fitzpatrick matrix (attached as **Exhibit 5**), have provided additional evidence as to the reasonableness of the hourly rates sought by Plaintiffs' counsel. The U.S. Attorney's Office for the District of Columbia, Civil Division, developed the Fitzpatrick matrix to provide "a reliable assessment of fees charged for complex federal litigation in the District [of Columbia]," as the United States Court of Appeals for the District of Columbia Circuit urged. Ex. 5 at 2. The hourly rates in the Fitzpatrick matrix are generally consistent with reliable rate surveys and rates awarded in the Denver District. *See, e.g., First Mercury Ins. Co. v. Wonderland*

*Homes*, No. 119-CV-00915-JLK-SKC, 2021 WL 3089155, at *5 (D. Colo. July 22, 2021) (observing "reasonable" rates ranging from $375 for associates to $650 for senior partners in 2019, and affirming reasonableness of rates of $775 per hour for equity partners in large firms in 2021.)

Based on the analysis described above, Conservation Groups determined that the following rates represent reasonable market rates in the Denver area for attorneys with a practice specialty comparable to that of Plaintiffs' Counsel in federal environmental and administrative law, based on years of experience:

- Melissa Hornbein is entitled to an hourly rate of $425 for 2020; $435 for 2021; and $445 for 2022.

- Kyle Tisdel is entitled to an hourly rate of $465 for 2020; $475 for 2021; and $485 for 2022.

- Barbara Chillcott is entitled to an hourly rate of $435 for 2021 and $445 for 2022.

## V.  CONSERVATION GROUPS SEEK REASONABLE TIME

Conservation Groups seek a reasonable amount of time spent by their attorneys in prosecuting this litigation. Each attorney's timesheets are attached as appendices to their respective declarations. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. The Ninth Circuit has held that "[b]y and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno*, 534 F.3d at 1112. Conservation Groups' attorneys have carefully reviewed their timesheets and applied billing judgment to omit time that is arguably non-compensable. Additionally, at this juncture,

Conservation Groups' attorneys have not included their time preparing this Petition, and pursuing settlement of Conservation Groups' claimed attorneys' fees. If the Parties are unable to settle, however, Conservation Groups will include any time expended on fee briefing or negotiations in an amended motion. *Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir. 1986)(The time spent in establishing entitlement to an amount of fees awardable is compensable); *Crow Indian Tribe v. United States*, No. CV 17-117-M-DLC, 2021 WL 3142155, at *10 (D. Mont. July 26, 2021)(fees on fees compensable); *Sorenson v. Concannon*, 161 F. Supp. 2d 1164, 1169 (D. Or. 2001)(time spent attempting to settle fees is compensable).

The following tables apply the hourly rates requested for each of Plaintiff's counsel above to the time for which compensation is sought:

| Melissa Hornbein | Time | Rate | Total |
|---|---:|---:|---:|
| 2020 | 57.1 | $425.00 | $24,267.50 |
| 2021 | 153.8 | $435.00 | $66,903.00 |
| 2022 | 50.7 | $445.00 | $22,561.50 |
| **TOTAL** | **261.6** | - | **$113,732.00** |

| Kyle Tisdel | Time | Rate | Total |
|---|---:|---:|---:|
| 2020 | 1.2 | $465.00 | $558.00 |
| 2021 | 25.0 | $475.00 | $11,875.00 |
| 2022 | 19.4 | $485.00 | $9,409.00 |
| **TOTAL** | **45.6** | - | **$21,842.00** |

| Barbara Chillcott | Time | Rate | Total |
|---|---:|---:|---:|
| 2021 | 12.6 | $435.00 | $5,481.00 |
| 2022 | 1.5 | $445.00 | $667.50 |
| **TOTAL** | **14.1** | - | **$6,148.50** |

**TOTAL ATTORNEYS' FEES: $141,722.50**

14

## VI. CONSERVATION GROUPS ARE ENTITLED TO RECOVER THEIR COSTS AND EXPENSES.

EAJA authorizes a court to award "costs" as enumerated at 28 U.S.C. § 1920, as well as "other expenses," 28 U.S.C. § 2412(a)(1)-(d)(1)(A). "[T]he [other] expenses enumerated in [subsection (d)] are set forth as examples rather than as an exclusive list" and "routine" expenses "billed to the client in the normal course of business and [] allowed under other fees statutes" are compensable; a contrary reading of EAJA "would contravene the purpose of EAJA to make competent legal representation available to the parties in litigation against the government." *Nat'l Labor Relations Bd. v. Pueblo of San Juan*, 305 F. Supp. 2d 1229, 1233 (D. N.M. 2003); *accord Int'l Woodworkers of America v. Donovan*, 792 F.2d 762, 767 (9th Cir. 1986) (ruling that "other expenses" under EAJA include "expenses normally billed to a client," such as telephone calls, postage, and attorney travel expenses).

In accordance with this Court's Order dated May 20, 2022 (ECF No. 32), Plaintiffs filed a Bill of Costs awardable under 28 U.S.C. § 1920, (ECF No. 33) and the Parties subsequently filed a stipulation of Costs (ECF No. 34). As a result, the nominal additional costs and expenses sought in this Petition represent only those not included in Plaintiff's Bill of Costs. Here, Conservation Groups seek $58.80, which represents Plaintiffs' total costs and expenses of $500.60 enumerated in Appendix B to the Declaration of Melissa Hornbein, less the $441.80 already recovered as a result of the Stipulation of Costs. (ECF No. 34).

## VII. CONCLUSION

Conservation Groups respectfully request that this Court award them $141,722.50 in attorneys' fees and $58.80 in costs, for a total of $141,781.30.

//

RESPECTFULLY SUBMITTED this 25th day of November, 2022.

    */s/ Melissa Hornbein*
Melissa A. Hornbein
Western Environmental Law Center
103 Reeder's Alley
Helena, MT
(p) 406.708.3058
hornbein@westernlaw.org

Kyle J. Tisdel (CO Bar No. 42098)
Western Environmental Law Center
208 Paseo del Pueblo Sur, Suite 602
Taos, New Mexico 87571
(p) 575.613.8050
tisdel@westernlaw.org

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
CERTIFICATE OF SERVICE (CM/ECF)**

I hereby certify that on November 25, 2022, I electronically filed the foregoing *PLAINTIFFS' PETITION FOR ATTORNEYS' FEES AND COSTS* with the Clerk of the Court via the CM/ECF system, which will send notification of such filing to other participants in this case.

*/s/ Melissa Hornbein*
Western Environmental Law Center

*Counsel for Plaintiffs*

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it is in 12 point font and is less than 40 pages, exclusive of the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

Dated this 25th day of November, 2022.

*/s/ Melissa Hornbein*
Melissa Hornbein
Western Environmental Law Center

*Counsel for Plaintiffs*